**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Bency McClain,<br><br>Plaintiff,<br><br>-against-<br><br>EQUIFAX INFORMATION SERVICES LLC,<br>TRANS UNION LLC,<br>NCB MANAGEMENT SERVICES, INC.<br>UNITED ACCOUNTS INC,<br>EXETER FINANCE LLC,<br>STRIDE BANK, N.A.<br><br>Defendants. | Case No. ______________<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit information in a manner that is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

2. The FCRA requires consumer reporting agencies and furnishers of information to follow reasonable procedures to assure maximum possible accuracy of reported information, to conduct prompt and reasonable reinvestigations of disputed information, and to correct or delete information that is inaccurate, incomplete, or unverifiable.

3. Notwithstanding these obligations, Defendants reported and continued to report inaccurate information concerning Plaintiff after Plaintiff disputed that information, causing Plaintiff

concrete and particularized harm.

## BACKGROUND ON CREDIT REPORTING

4. Credit reporting is a fact of modern life. Plaintiff, like every other consumer, has no say in whether private companies such as Defendants Equifax and Trans Union compile, maintain, and sell credit reports concerning her to the businesses that purchase them, commonly called "users" of consumer reports.

5. There are technical distinctions between a "consumer report" and a "consumer disclosure," but for simplicity Plaintiff uses the ordinary term "credit report" throughout this Complaint — the same term used on www.AnnualCreditReport.com, the website the federal government required Equifax, Experian, and Trans Union to establish so that consumers could obtain their free reports.

6. Plaintiff's only protection is the law's guarantee that credit reporting be done accurately and completely. Defendants Equifax and Trans Union are not permitted to report false information, and they are not permitted to report incomplete information. Because credit reports, and the credit scores derived from them, profoundly affect a consumer's ability to obtain credit, employment, security clearances, and housing, whether by purchase or rental, accuracy and completeness are essential. Congress recognized as much when it enacted the FCRA, declaring the need "to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

## THE DISPUTE METHOD OF CORRECTING INACCURATE INFORMATION UNDER THE FCRA

7. When a consumer such as Plaintiff discovers false or incomplete information on her credit reports, the consumer has the right to dispute that information with the credit reporting agencies.

8. The consumer disputes the information — by telephone, online, by fax, or by mail — and requests that the credit reporting agencies investigate so that the information is corrected, if possible, or deleted. Defendants Equifax and Trans Union must then notify the furnisher of the information of the dispute within the time the FCRA allows. A failure to give that notice is itself a violation of the FCRA.

9. Defendants Equifax and Trans Union must also conduct their own reasonable investigation of the dispute, examining all information they have or can reasonably obtain to assist that investigation, and must correct information shown to be inaccurate or incomplete, or delete the account entirely where it is inaccurate, incomplete, or cannot be verified.

## STATUTORY FRAMEWORK

10. The FCRA requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information they report, and to conduct a reasonable reinvestigation of disputed information. 15 U.S.C. §§ 1681e(b), 1681i.

11. The FCRA further requires that a furnisher which receives notice of a dispute conduct its own reasonable investigation and correct or delete information it cannot verify. 15 U.S.C. § 1681s-2(b). The specific duties of each Defendant, and the manner in which each

breached them, are set forth below.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the laws of the United States.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district and a substantial part of the events giving rise to these claims occurred in this district.

## PARTIES

14. Plaintiff Bency McClain is a natural person residing in Brooklyn, New York 11234.

15. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

16. Defendant EQUIFAX INFORMATION SERVICES LLC is a Georgia limited liability company with its principal place of business in Atlanta, Georgia, and regularly conducts business in this district.

17. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), in that it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

18. Defendant TRANS UNION LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois, and regularly conducts business in this district.

19. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), in that it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports.

20. Defendant NCB MANAGEMENT SERVICES, INC. is an entity with its principal place of business in Trevose, Pennsylvania and regularly conducts business in this district.

21. NCB Management is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Trans Union and Equifax.

22. Defendant UNITED ACCOUNTS INC. is an entity with its principal place of business in Fargo, North Dakota and regularly conducts business in this district.

23. United Accounts, Inc. is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Trans Union.

24. Defendant EXETER FINANCE LLC is an entity with its principal place of business in Irving, Texas and regularly conducts business in this district.

25. Exeter is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its

consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Equifax.

26. Defendant STRIDE BANK, N.A. is an entity with its principal place of business in Enid Oklahoma, and regularly conducts business in this district.

27. Stride is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2, in that it regularly and in the ordinary course of business furnishes information relating to its consumer accounts to one or more consumer reporting agencies, and furnished the information at issue in this action to Equifax. It reports under the name of Chime.

28. The reports at issue in this action are "consumer reports" as defined by 15 U.S.C. § 1681a(d), in that they contain information bearing on Plaintiff's credit worthiness, credit standing, and credit capacity, and were used or expected to be used in connection with transactions primarily for personal, family, or household purposes.

## <u>FACTUAL ALLEGATIONS</u>

29. The accounts at issue were incurred primarily for personal, family, and household purposes.

30. In or about 2024 and 2025, Plaintiff applied for credit for personal, family, and household purposes. In connection with those applications, Plaintiff's consumer reports were accessed, and Plaintiff was denied credit or offered credit on materially less favorable terms based upon the information the Defendant consumer reporting agencies were reporting about her.

31. As reflected on Plaintiff's Experian consumer report, Plaintiff sought credit from

COMENITYCB/ULTA MC (December 19, 2025), CAP ONE AUTO VIA DEALER (September 28, 2024), GLOBAL LENDING SERVICES (September 28, 2024), NOWCOM/WESTLAKE FINANCIAL (September 28, 2024), and WAYMC/CBNA (July 19, 2024).

32. As reflected on Plaintiff's Equifax consumer report, Plaintiff sought credit from US DEPARTMENT OF EDUCATION (October 8, 2024), AMERICAN CREDIT ACCEPTANCE (September 28, 2024), CAP ONE VIA DEALER (September 28, 2024), and GLOBAL LENDING SERVICES LLC (September 28, 2024).

33. As reflected on Plaintiff's Trans Union consumer report, Plaintiff sought credit from FLAGSHIP CREDIT ACCEPTANCE (September 28, 2024), AMERICREDIT (September 28, 2024), CRESCENT BANK (BATON ROUGE — Inquiry Date: September 28, 2024), CAPITAL ONE VIA DEALER (September 28, 2024), CONSUMER PORTFOLIO SERVICES (September 28, 2024), CBCROLLS AUTO SALES (September 28, 2024), and CREDIT ONE BANK (September 12, 2024).

34. Upon reviewing her consumer reports in connection with these denials, Plaintiff discovered the inaccurate and incomplete information described below, which she then disputed.

35. On or about April, 2026, Plaintiff disputed the inaccurate information with Equifax and Trans Union, identifying the specific inaccuracies described below.

36. NCB Management furnished information concerning Plaintiff's account to Trans Union and Equifax.

37. United Accounts furnished information concerning Plaintiff's account to Trans Union.

Plaintiff does not allege that United Accounts furnished the information at issue to Equifax.

38. Exeter furnished information concerning Plaintiff's account to Equifax. Plaintiff does not allege that Exeter furnished the information at issue to Trans Union.

39. Stride furnished information concerning Plaintiff's account to Equifax. Plaintiff does not allege that Chime / Stride furnished the information at issue to Trans Union.

40. Upon information and belief, Trans Union and Equifax sent a dispute to NCB Management providing all relevant disputed information.

41. Upon information and belief, Trans Union sent a dispute to United Accounts providing all relevant disputed information.

42. Upon information and belief, Equifax sent a dispute to Exeter providing all relevant disputed information.

43. Upon information and belief, Equifax sent a dispute to Chime / Stride providing all relevant disputed information.

44. Each such notice triggered the duties imposed on the furnisher defendants by 15 U.S.C. § 1681s-2(b), including the duty to conduct a reasonable investigation of the disputed information and to correct or delete information that could not be verified.

45. More than thirty days elapsed following Plaintiff's dispute. The inaccuracies described below were not corrected and continued to be reported.

## THE ACCOUNTS AT ISSUE

46. Plaintiff disputed accounts containing errors on her Equifax and Trans Union reports that Defendants Equifax and Trans Union neither corrected, completed, nor deleted if it cannot be verified. Upon information and belief, Defendants Equifax and Trans Union knew that the furnishers of the information on these accounts were unreliable, yet failed to weigh that unreliability in conducting whatever investigation they performed.

47. The accounts at issue are the NCB Management account ending XXXXXXXXXXXX1026, the United Accounts account ending XXXXXXXXXXXX4337, the Exeter account ending XXXXXXXXXXXX1001, the NCB Management account ending XXXXXXXXXXXX0907, and the Stride account ending XXXXXXXXXXXX3793. They are referred to in this Complaint as the "Accounts."

## INACCURACIES REPORTED BY EQUIFAX

48. The Exeter account ending XXXXXXXXXXXX1001, as reported by Equifax, is inaccurate and incomplete in that November 2020 to February 2021 is reported inaccurately and in wrong progression and it is inconsistent with how it is reported on other CRAs.

49. The NCB Management account ending XXXXXXXXXXXX0907, as reported by Equifax, is inaccurate and incomplete in that August 2022 to March 2023 payment not reported, April 2025 payment not reported, Account is reporting close but open on other CRAs.

50. The Stride account ending XXXXXXXXXXXX3793, as reported by Equifax, is inaccurate and incomplete in that a lot of payment data is missing in the payment history

## INACCURACIES REPORTED BY TRANS UNION

51. The NCB Management account ending XXXXXXXXXXXX1026, as reported by Trans Union, is inaccurate and incomplete in that Plaintiff did not open or apply for this account, no payment data reported, and reinvestigate and update or delete.

52. The United Accounts account ending XXXXXXXXXXXX4337, as reported by Trans Union, is inaccurate and incomplete, no payment data reported.

## NCB MANAGEMENT'S INVESTIGATION FAILURES

53. Disputed to Trans Union and Equifax on or about April 1, 2026

54. Plaintiff disputed the account ending XXXXXXXXXXXX1026 and the account ending XXXXXXXXXXXX0907, furnished by NCB Management, with Trans Union and Equifax, each of whom forwarded the dispute to NCB Management.

55. Once a consumer reporting agency provides notice of a dispute to a furnisher such as NCB Management, 15 U.S.C. § 1681s-2(b) obligates NCB Management to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

56. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. This is a binary duty: NCB Management was required either to make the account accurate and complete, or to delete it. What the FCRA does not permit is for NCB Management to investigate and leave the account inaccurate or incomplete.

57. Layered on top of that, the information NCB Management reported had to be verified as accurate and complete. If NCB Management could not verify the information, it had only one lawful option: to delete the account. This has long been settled law, and a sophisticated furnisher such as NCB Management is well aware of these requirements.

58. The errors in NCB Management's reporting were obvious, objectively and readily identifiable, and verifiable from the face of the dispute and the credit reporting itself, yet NCB Management failed to correct them and refused to make the account accurate and complete.

59. It is unclear whether NCB Management conducted any investigation at all. Plaintiff therefore alleges that NCB Management conducted no investigation, in negligent, reckless, wanton, and/or willful violation of the FCRA. Alternatively, as Plaintiff is entitled to plead under Rule 8, Plaintiff alleges that NCB Management conducted an investigation that was itself a negligent, reckless, wanton, and/or willful violation of the FCRA.

60. In any such investigation, NCB Management realized that incomplete, inaccurate, or unverifiable information existed in its reporting, yet refused to make the information accurate and complete and refused to delete the account.

61. Additionally, NCB Management knew Plaintiff disputed the account, yet refused to mark it as disputed as the FCRA requires, thereby rendering the account even more inaccurate and incomplete. By suppressing the material fact of the dispute, NCB Management caused the account to be misleading, because the account could be accurate only if it

reported that it was disputed.

62. NCB Management expected the users of Plaintiff's consumer reports to be misled by the absence of the dispute notation. NCB Management was not unaware of this effect; it was a driving force behind the decision not to mark the account as disputed.

63. Furnishers such as NCB Management engage in this conduct for concrete reasons. When an account is marked as currently disputed, virtually all scoring models disregard it, so NCB Management loses the coercive leverage of a negative account against the consumer. Human users who see a disputed account likewise know to discount it or question its accuracy. And a furnisher that accurately marked every disputed account would have to account, internally and externally, for the true percentage of its accounts under dispute, inviting scrutiny of the data practices driving that number.

64. The bottom line is that NCB Management refused to properly investigate Plaintiff's dispute and refused to mark the account as disputed, each of which independently violates the FCRA. Users of Plaintiff's consumer reports accessed those reports after NCB Management refused both to investigate properly and to mark the account as disputed.

**UNITED ACCOUNTS' INVESTIGATION FAILURES**

65. Disputed to Trans Union on or about April 1, 2026

66. Plaintiff disputed the account ending XXXXXXXXXXXX4337, furnished by United Accounts, with Trans Union, which forwarded the dispute to United Accounts.

67. Once a consumer reporting agency provides notice of a dispute to a furnisher such as

United Accounts, 15 U.S.C. § 1681s-2(b) obligates United Accounts to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

68. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. This is a binary duty: United Accounts was required either to make the account accurate and complete, or to delete it. What the FCRA does not permit is for United Accounts to investigate and leave the account inaccurate or incomplete.

69. Layered on top of that, the information United Accounts reported had to be verified as accurate and complete. If United Accounts could not verify the information, it had only one lawful option: to delete the account. This has long been settled law, and a sophisticated furnisher such as United Accounts is well aware of these requirements.

70. The errors in United Accounts's reporting were obvious, objectively and readily identifiable, and verifiable from the face of the dispute and the credit reporting itself, yet United Accounts failed to correct them and refused to make the account accurate and complete.

71. It is unclear whether United Accounts conducted any investigation at all. Plaintiff therefore alleges that United Accounts conducted no investigation, in negligent, reckless, wanton, and/or willful violation of the FCRA. Alternatively, as Plaintiff is entitled to plead under Rule 8, Plaintiff alleges that United Accounts conducted an investigation that was itself a negligent, reckless, wanton, and/or willful violation of the FCRA.

72. In any such investigation, United Accounts realized that incomplete, inaccurate, or unverifiable information existed in its reporting, yet refused to make the information accurate and complete and refused to delete the account.

73. Additionally, United Accounts knew Plaintiff disputed the account, yet refused to mark it as disputed as the FCRA requires, thereby rendering the account even more inaccurate and incomplete. By suppressing the material fact of the dispute, United Accounts caused the account to be misleading, because the account could be accurate only if it reported that it was disputed.

74. United Accounts expected the users of Plaintiff's consumer reports to be misled by the absence of the dispute notation. United Accounts was not unaware of this effect; it was a driving force behind the decision not to mark the account as disputed.

75. Furnishers such as United Accounts engage in this conduct for concrete reasons. When an account is marked as currently disputed, virtually all scoring models disregard it, so United Accounts loses the coercive leverage of a negative account against the consumer. Human users who see a disputed account likewise know to discount it or question its accuracy. And a furnisher that accurately marked every disputed account would have to account, internally and externally, for the true percentage of its accounts under dispute, inviting scrutiny of the data practices driving that number.

76. The bottom line is that United Accounts refused to properly investigate Plaintiff's dispute and refused to mark the account as disputed, each of which independently violates the FCRA. Users of Plaintiff's consumer reports accessed those reports after United Accounts

refused both to investigate properly and to mark the account as disputed.

## EXETER'S INVESTIGATION FAILURES

77. Disputed to Equifax on or about April 1, 2026

78. Plaintiff disputed the account ending XXXXXXXXXXXX1001, furnished by Exeter, with Equifax, which forwarded the dispute to Exeter.

79. Once a consumer reporting agency provides notice of a dispute to a furnisher such as Exeter, 15 U.S.C. § 1681s-2(b) obligates Exeter to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

80. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. This is a binary duty: Exeter was required either to make the account accurate and complete, or to delete it. What the FCRA does not permit is for Exeter to investigate and leave the account inaccurate or incomplete.

81. Layered on top of that, the information Exeter reported had to be verified as accurate and complete. If Exeter could not verify the information, it had only one lawful option: to delete the account. This has long been settled law, and a sophisticated furnisher such as Exeter is well aware of these requirements.

82. The errors in Exeter's reporting were obvious, objectively and readily identifiable, and verifiable from the face of the dispute and the credit reporting itself, yet Exeter failed to

correct them and refused to make the account accurate and complete.

83. It is unclear whether Exeter conducted any investigation at all. Plaintiff therefore alleges that Exeter conducted no investigation, in negligent, reckless, wanton, and/or willful violation of the FCRA. Alternatively, as Plaintiff is entitled to plead under Rule 8, Plaintiff alleges that Exeter conducted an investigation that was itself a negligent, reckless, wanton, and/or willful violation of the FCRA.

84. In any such investigation, Exeter realized that incomplete, inaccurate, or unverifiable information existed in its reporting, yet refused to make the information accurate and complete and refused to delete the account.

85. Additionally, Exeter knew Plaintiff disputed the account, yet refused to mark it as disputed as the FCRA requires, thereby rendering the account even more inaccurate and incomplete. By suppressing the material fact of the dispute, Exeter caused the account to be misleading, because the account could be accurate only if it reported that it was disputed.

86. Exeter expected the users of Plaintiff's consumer reports to be misled by the absence of the dispute notation. Exeter was not unaware of this effect; it was a driving force behind the decision not to mark the account as disputed.

87. Furnishers such as Exeter engage in this conduct for concrete reasons. When an account is marked as currently disputed, virtually all scoring models disregard it, so Exeter loses the coercive leverage of a negative account against the consumer. Human users who see a disputed account likewise know to discount it or question its accuracy. And a furnisher

that accurately marked every disputed account would have to account, internally and externally, for the true percentage of its accounts under dispute, inviting scrutiny of the data practices driving that number.

88. The bottom line is that Exeter refused to properly investigate Plaintiff's dispute and refused to mark the account as disputed, each of which independently violates the FCRA. Users of Plaintiff's consumer reports accessed those reports after Exeter refused both to investigate properly and to mark the account as disputed.

**CHIME / STRIDE'S INVESTIGATION FAILURES**

89. Disputed to Equifax on or about April 1, 2026

90. Plaintiff disputed the account ending XXXXXXXXXXXX3793, furnished by Chime / Stride, with Equifax, which forwarded the dispute to Chime / Stride.

91. Once a consumer reporting agency provides notice of a dispute to a furnisher such as Chime / Stride, 15 U.S.C. § 1681s-2(b) obligates Chime / Stride to conduct a reasonable investigation of the dispute, to review all relevant information forwarded to it, and to report the results back to the consumer reporting agency.

92. That duty includes the obligation to mark the account as disputed so that the account is reported accurately and completely during the investigation. This is a binary duty: Chime / Stride was required either to make the account accurate and complete, or to delete it. What the FCRA does not permit is for Chime / Stride to investigate and leave the account inaccurate or incomplete.

93. Layered on top of that, the information Chime / Stride reported had to be verified as accurate and complete. If Chime / Stride could not verify the information, it had only one lawful option: to delete the account. This has long been settled law, and a sophisticated furnisher such as Chime / Stride is well aware of these requirements.

94. The errors in Chime / Stride's reporting were obvious, objectively and readily identifiable, and verifiable from the face of the dispute and the credit reporting itself, yet Chime / Stride failed to correct them and refused to make the account accurate and complete.

95. It is unclear whether Chime / Stride conducted any investigation at all. Plaintiff therefore alleges that Chime / Stride conducted no investigation, in negligent, reckless, wanton, and/or willful violation of the FCRA. Alternatively, as Plaintiff is entitled to plead under Rule 8, Plaintiff alleges that Chime / Stride conducted an investigation that was itself a negligent, reckless, wanton, and/or willful violation of the FCRA.

96. In any such investigation, Chime / Stride realized that incomplete, inaccurate, or unverifiable information existed in its reporting, yet refused to make the information accurate and complete and refused to delete the account.

97. Additionally, Chime / Stride knew Plaintiff disputed the account, yet refused to mark it as disputed as the FCRA requires, thereby rendering the account even more inaccurate and incomplete. By suppressing the material fact of the dispute, Chime / Stride caused the account to be misleading, because the account could be accurate only if it reported that it was disputed.

98. Chime / Stride expected the users of Plaintiff's consumer reports to be misled by the

absence of the dispute notation. Chime / Stride was not unaware of this effect; it was a driving force behind the decision not to mark the account as disputed.

99. Furnishers such as Chime / Stride engage in this conduct for concrete reasons. When an account is marked as currently disputed, virtually all scoring models disregard it, so Chime / Stride loses the coercive leverage of a negative account against the consumer. Human users who see a disputed account likewise know to discount it or question its accuracy. And a furnisher that accurately marked every disputed account would have to account, internally and externally, for the true percentage of its accounts under dispute, inviting scrutiny of the data practices driving that number.

100. The bottom line is that Chime / Stride refused to properly investigate Plaintiff's dispute and refused to mark the account as disputed, each of which independently violates the FCRA. Users of Plaintiff's consumer reports accessed those reports after Chime / Stride refused both to investigate properly and to mark the account as disputed.

## THE INVESTIGATIONS VIOLATED THE FCRA

101. The disputes were straightforward. For each Account, Plaintiff identified the specific inaccurate, incomplete, or unverifiable information, along with any incorrect personal information appearing on the report.

102. Defendants Equifax and Trans Union knew it was forbidden to report incomplete, inaccurate, or unverifiable information, and reported it nonetheless. These fundamental rules of credit reporting were disregarded — intentionally, recklessly, or negligently — as applied to Plaintiff's Accounts.

103. Even a cursory review of the disputes would have revealed that the errors were obvious and that the Accounts should have been corrected or deleted. Had Defendants Equifax and Trans Union conducted even a minimally competent investigation, the false and incomplete information would more likely than not have been removed from Plaintiff's credit reports.

104. A reasonable investigation would have resulted in the correction or deletion of the Accounts, particularly because the disputed information was drawn directly from the reports Defendants Equifax and Trans Union themselves produced. Defendants Equifax and Trans Union nonetheless refused to invest the time, money, and effort required to discharge their federally mandated duty to investigate.

105. The result was that plainly inaccurate and incomplete Accounts were allowed to remain on Plaintiff's credit reports. Defendants Equifax and Trans Union continued to report the Accounts even after their own investigation, and thereby failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports.

106. Throughout this period — before the dispute, during it, and after any investigation concluded — Defendants Equifax and Trans Union continued to permit users to access Plaintiff's credit reports. Once Plaintiff gave notice, Defendants Equifax and Trans Union knew the Accounts could not remain unless corrected, yet refused both to investigate properly under 15 U.S.C. § 1681i and to assure maximum possible accuracy under 15 U.S.C. § 1681e(b).

107. By allowing the Accounts to remain with inaccurate, incomplete, unverifiable, or

contradictory information, Defendants Equifax and Trans Union created a misleading impression likely to cause users to treat the Accounts as accurately reported and to weigh them in evaluating Plaintiff, when the law required their deletion. Just as the FCRA forbids obsolete accounts from remaining on a report beyond the permitted period, it forbids the reporting of inaccurate, incomplete, unverifiable, or contradictory information — and Defendants Equifax and Trans Union thereby presented a false picture of Plaintiff to the users of their reports.

**DEFENDANTS FAILED TO PROVIDE THE METHOD OF VERIFICATION UNDER SECTION 1681I(A)(7)**

108. The FCRA entitles a consumer, upon request, to a description of the procedure used to determine the accuracy and completeness of disputed information, including the method of verification. 15 U.S.C. 1681i(a)(7). Defendants Equifax and Trans Union did not provide Plaintiff with any such description of the procedure or method by which the disputed information in the Accounts was purportedly verified.

109. Without any disclosed method of verification, there is no basis on the face of Defendants Equifax and Trans Union' reporting to conclude that a reasonable investigation of the disputed Accounts was ever performed.

**DEFENDANTS REFUSED TO PROVIDE PLAINTIFF WITH A FULL FILE DISCLOSURE AS REQUIRED BY SECTION 1681g OF THE FCRA**

110. Plaintiff requested Plaintiff's full file disclosure from annualcreditreport.com. Under 15 U.S.C. 1681g, a full file disclosure is more than what appears in a consumer report or a credit report; it is all of the information the consumer reporting agency maintains on the

consumer.

111. Defendants Equifax and Trans Union refused to provide that disclosure to Plaintiff. The requirement of Section 1681g is straightforward: provide to Plaintiff everything contained in Plaintiff's file.

112. Defendants Equifax and Trans Union knew Plaintiff had requested this information, had identified Plaintiff, and had directed that the file be sent to Plaintiff's home address.

113. Defendants Equifax and Trans Union nonetheless refused to provide all of the data contained in their files. As one example, numerous accounts are reported with missing data even though Defendants Equifax and Trans Union possess that data.

114. Defendants Equifax and Trans Union thereby deprived Plaintiff of Plaintiff's right under Section 1681g to see everything in Plaintiff's file that the law requires to be provided.

115. Without access to all of the information in Plaintiff's file, Plaintiff is unable to determine whether there is additional inaccurate or incomplete information that Plaintiff would need to dispute had Plaintiff been given the full file as required by law.

## **DEFENDANTS' DUTIES AND BREACH**

116. The FCRA demands of consumer reporting agencies that they utilize reasonable procedures to assure maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

117. Also, when a consumer disputes the accuracy of information through the consumer reporting agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

## DAMAGES SUFFERED BY PLAINTIFF

118. As a direct and proximate result of the actions and inactions of all Defendants, Plaintiff suffered actual damages, including but not limited to the lowering of her credit scores, resulting in the denial of credit or the extension of credit only on materially less favorable terms and at higher interest rates; the inability to secure adequate transportation and housing for her family; and the loss of employment opportunities.

119. Plaintiff further suffered anger, anxiety, emotional distress, fear, frustration, humiliation, and embarrassment, together with physical manifestations of that distress, as well as economic loss and an unjustified invasion of her personal privacy. These injuries were suffered in the past, continue to be suffered, and will continue in the future. All acts and omissions of any employee or agent of the Defendants were undertaken within the line and scope of that employment or agency relationship.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to follow reasonable procedures
(Against Equifax)

120. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if

fully set forth herein.

121. Whenever a consumer reporting agency prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

122. Equifax prepared and published consumer reports concerning Plaintiff containing the inaccurate and incomplete information described above.

123. Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff.

124. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

125. Equifax's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

126. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT II**
**15 U.S.C. § 1681i(a)(1)(A)**
**Failure to reinvestigate**
(Against Equifax)

127. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

128. Upon receiving notice of a dispute from a consumer, a consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, free of charge, and record the current status of the disputed information or delete the item within thirty days.

129. Plaintiff disputed the inaccurate information appearing on Equifax's report on or about April 1, 2026.

130. Equifax failed to conduct a reasonable reinvestigation. A reasonable reinvestigation would have identified and corrected the inaccuracies described above.

131. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

132. Equifax's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

133. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT III**
**15 U.S.C. § 1681i(a)(4)**
**Ignoring the evidence submitted**
(Against Equifax)

134. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

135. In conducting a reinvestigation, a consumer reporting agency must review and consider all relevant information submitted by the consumer.

136. Equifax failed to review and consider the information Plaintiff submitted with her dispute, including the documentation identifying the specific inaccuracies described above.

137. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

138. Equifax's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

139. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT IV**
**15 U.S.C. § 1681i(a)(5)(A)**
**Failure to delete or correct**
(Against Equifax)

140. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

141. If, after any reinvestigation, an item of disputed information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency must promptly delete or modify that item of information.

142. Equifax failed to delete or modify the inaccurate and incomplete information described

above, which continued to appear on Plaintiff's consumer reports after the reinvestigation concluded.

143. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

144. Equifax's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

145. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT V**
**15 U.S.C. § 1681g(a)**
**Incomplete file disclosure**
(Against Equifax)

146. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

147. Pursuant to 15 U.S.C. § 1681g(a), a consumer reporting agency must, upon request and proper identification, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

148. On or about April 1, 2026, Plaintiff requested her full file disclosure from Equifax.

149. Equifax failed to provide a complete and accurate disclosure of her file, omitting information contained in Plaintiff's file, including account-level payment history data

reflected in reports furnished to third parties.

150. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

151. Equifax's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

152. In the alternative, Equifax's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT VI**
**15 U.S.C. § 1681e(b)**
**Failure to follow reasonable procedures**
(Against Trans Union)

153. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

154. Whenever a consumer reporting agency prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

155. Trans Union prepared and published consumer reports concerning Plaintiff containing the inaccurate and incomplete information described above.

156. Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff.

157. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

158. Trans Union's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

159. In the alternative, Trans Union's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT VII**
**15 U.S.C. § 1681i(a)(1)(A)**
**Failure to reinvestigate**
(Against Trans Union)

160. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

161. Upon receiving notice of a dispute from a consumer, a consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, free of charge, and record the current status of the disputed information or delete the item within thirty days.

162. Plaintiff disputed the inaccurate information appearing on Trans Union's report on or about April 1, 2026.

163. Trans Union failed to conduct a reasonable reinvestigation. A reasonable reinvestigation

would have identified and corrected the inaccuracies described above.

164. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

165. Trans Union's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

166. In the alternative, Trans Union's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT VIII**
**15 U.S.C. § 1681i(a)(4)**
**Ignoring the evidence submitted**
(Against Trans Union)

167. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

168. In conducting a reinvestigation, a consumer reporting agency must review and consider all relevant information submitted by the consumer.

169. Trans Union failed to review and consider the information Plaintiff submitted with her dispute, including the documentation identifying the specific inaccuracies described above.

170. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered concrete

injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

171. Trans Union's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

172. In the alternative, Trans Union's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT IX**
**15 U.S.C. § 1681i(a)(5)(A)**
**Failure to delete or correct**
(Against Trans Union)

173. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

174. If, after any reinvestigation, an item of disputed information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency must promptly delete or modify that item of information.

175. Trans Union failed to delete or modify the inaccurate and incomplete information described above, which continued to appear on Plaintiff's consumer reports after the reinvestigation concluded.

176. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost

credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

177. Trans Union's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

178. In the alternative, Trans Union's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT X**
**15 U.S.C. § 1681g(a)**
**Incomplete file disclosure**
(Against Trans Union)

179. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

180. Pursuant to 15 U.S.C. § 1681g(a), a consumer reporting agency must, upon request and proper identification, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

181. On or about April 1, 2026, Plaintiff requested her full file disclosure from Trans Union.

182. Trans Union failed to provide a complete and accurate disclosure of her file, omitting information contained in Plaintiff's file, including account-level payment history data reflected in reports furnished to third parties.

183. As a direct and proximate result of Trans Union's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost

credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

184. Trans Union's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

185. In the alternative, Trans Union's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XI**
**15 U.S.C. § 1681s-2(b)(1)(A)**
**Failure to investigate**
(Against NCB Management)

186. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

187. Upon receiving notice of a dispute from a consumer reporting agency, a furnisher of information must conduct an investigation with respect to the disputed information.

188. Upon information and belief, Trans Union and Equifax forwarded notice of Plaintiff's dispute to NCB Management, triggering NCB Management's duties under 15 U.S.C. § 1681s-2(b).

189. NCB Management failed to conduct a reasonable investigation of the disputed account. A reasonable investigation would have revealed the inaccuracies described above, which are apparent from NCB Management's own records.

190. As a direct and proximate result of NCB Management's conduct, Plaintiff suffered

concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

191. NCB Management's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

192. In the alternative, NCB Management's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XII**
**15 U.S.C. § 1681s-2(b)(1)(B)**
**Failure to review what the bureaus sent**
(Against NCB Management)

193. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

194. A furnisher receiving notice of a dispute must review all relevant information provided to it by the consumer reporting agency.

195. NCB Management failed to review all relevant information forwarded to it by Trans Union and Equifax concerning Plaintiff's dispute.

196. As a direct and proximate result of NCB Management's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

197. NCB Management's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

198. In the alternative, NCB Management's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XIII**
**15 U.S.C. § 1681s-2(b)(1)(D)**
**Failure to report results to all bureaus**
(Against NCB Management)

199. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

200. Where an investigation finds that information is incomplete or inaccurate, the furnisher must report those results to all other consumer reporting agencies to which it furnished the information and that compile and maintain files on a nationwide basis.

201. NCB Management failed to report the results of its investigation to all consumer reporting agencies to which it furnished information concerning the account. The account accordingly continued to be reported inconsistently across Plaintiff's consumer reports.

202. As a direct and proximate result of NCB Management's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

203. NCB Management's conduct was willful, entitling Plaintiff to actual damages, statutory

damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

204. In the alternative, NCB Management's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XIV**
**15 U.S.C. § 1681s-2(b)(1)(E)**
**Failure to correct or block**
(Against NCB Management)

205. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

206. If an investigation finds that an item of information is inaccurate, incomplete, or cannot be verified, the furnisher must promptly modify, delete, or permanently block the reporting of that information.

207. NCB Management failed to modify, delete, or permanently block the reporting of the inaccurate and incomplete information concerning the account, which continued to be reported after the investigation concluded.

208. As a direct and proximate result of NCB Management's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

209. NCB Management's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15

U.S.C. § 1681n.

210. In the alternative, NCB Management's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XV**
**15 U.S.C. § 1681s-2(b)(1)(A)**
**Failure to investigate**
(Against United Accounts)

211. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

212. Upon receiving notice of a dispute from a consumer reporting agency, a furnisher of information must conduct an investigation with respect to the disputed information.

213. Upon information and belief, Trans Union forwarded notice of Plaintiff's dispute to United Accounts, triggering United Accounts's duties under 15 U.S.C. § 1681s-2(b).

214. United Accounts failed to conduct a reasonable investigation of the disputed account. A reasonable investigation would have revealed the inaccuracies described above, which are apparent from United Accounts's own records.

215. As a direct and proximate result of United Accounts's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

216. United Accounts's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15

U.S.C. § 1681n.

217. In the alternative, United Accounts's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XVI**
**15 U.S.C. § 1681s-2(b)(1)(B)**
**Failure to review what the bureaus sent**
(Against United Accounts)

218. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

219. A furnisher receiving notice of a dispute must review all relevant information provided to it by the consumer reporting agency.

220. United Accounts failed to review all relevant information forwarded to it by Trans Union concerning Plaintiff's dispute.

221. As a direct and proximate result of United Accounts's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

222. United Accounts's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

223. In the alternative, United Accounts's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XVII**
**15 U.S.C. § 1681s-2(b)(1)(D)**
**Failure to report results to all bureaus**
(Against United Accounts)

224. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

225. Where an investigation finds that information is incomplete or inaccurate, the furnisher must report those results to all other consumer reporting agencies to which it furnished the information and that compile and maintain files on a nationwide basis.

226. United Accounts failed to report the results of its investigation to all consumer reporting agencies to which it furnished information concerning the account. The account accordingly continued to be reported inconsistently across Plaintiff's consumer reports.

227. As a direct and proximate result of United Accounts's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

228. United Accounts's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

229. In the alternative, United Accounts's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XVIII**
**15 U.S.C. § 1681s-2(b)(1)(E)**
**Failure to correct or block**
(Against United Accounts)

230. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

231. If an investigation finds that an item of information is inaccurate, incomplete, or cannot be verified, the furnisher must promptly modify, delete, or permanently block the reporting of that information.

232. United Accounts failed to modify, delete, or permanently block the reporting of the inaccurate and incomplete information concerning the account, which continued to be reported after the investigation concluded.

233. As a direct and proximate result of United Accounts's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

234. United Accounts's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

235. In the alternative, United Accounts's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XIX**
**15 U.S.C. § 1681s-2(b)(1)(A)**
**Failure to investigate**
(Against Exeter)

236. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

237. Upon receiving notice of a dispute from a consumer reporting agency, a furnisher of information must conduct an investigation with respect to the disputed information.

238. Upon information and belief, Equifax forwarded notice of Plaintiff's dispute to Exeter, triggering Exeter's duties under 15 U.S.C. § 1681s-2(b).

239. Exeter failed to conduct a reasonable investigation of the disputed account. A reasonable investigation would have revealed the inaccuracies described above, which are apparent from Exeter's own records.

240. As a direct and proximate result of Exeter's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

241. Exeter's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

242. In the alternative, Exeter's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XX**
**15 U.S.C. § 1681s-2(b)(1)(B)**
**Failure to review what the bureaus sent**
(Against Exeter)

243. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

244. A furnisher receiving notice of a dispute must review all relevant information provided to it by the consumer reporting agency.

245. Exeter failed to review all relevant information forwarded to it by Equifax concerning Plaintiff's dispute.

246. As a direct and proximate result of Exeter's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

247. Exeter's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

248. In the alternative, Exeter's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XXI**
**15 U.S.C. § 1681s-2(b)(1)(D)**
**Failure to report results to all bureaus**
(Against Exeter)

249. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if

fully set forth herein.

250. Where an investigation finds that information is incomplete or inaccurate, the furnisher must report those results to all other consumer reporting agencies to which it furnished the information and that compile and maintain files on a nationwide basis.

251. Exeter failed to report the results of its investigation to all consumer reporting agencies to which it furnished information concerning the account. The account accordingly continued to be reported inconsistently across Plaintiff's consumer reports.

252. As a direct and proximate result of Exeter's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

253. Exeter's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

254. In the alternative, Exeter's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XXII**
**15 U.S.C. § 1681s-2(b)(1)(E)**
**Failure to correct or block**
(Against Exeter)

255. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

256. If an investigation finds that an item of information is inaccurate, incomplete, or cannot be

verified, the furnisher must promptly modify, delete, or permanently block the reporting of that information.

257. Exeter failed to modify, delete, or permanently block the reporting of the inaccurate and incomplete information concerning the account, which continued to be reported after the investigation concluded.

258. As a direct and proximate result of Exeter's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

259. Exeter's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

260. In the alternative, Exeter's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XXIII**
**15 U.S.C. § 1681s-2(b)(1)(A)**
**Failure to investigate**
(Against Stride)

261. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

262. Upon receiving notice of a dispute from a consumer reporting agency, a furnisher of information must conduct an investigation with respect to the disputed information.

263. Upon information and belief, Equifax forwarded notice of Plaintiff's dispute to Stride,

triggering Stride's duties under 15 U.S.C. § 1681s-2(b).

264. Stride failed to conduct a reasonable investigation of the disputed account. A reasonable investigation would have revealed the inaccuracies described above, which are apparent from Stride's own records.

265. As a direct and proximate result of Stride's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

266. Stride's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

267. In the alternative, Stride's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XXIV**
**15 U.S.C. § 1681s-2(b)(1)(B)**
**Failure to review what the bureaus sent**
(Against Stride)

268. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

269. A furnisher receiving notice of a dispute must review all relevant information provided to it by the consumer reporting agency.

270. Stride failed to review all relevant information forwarded to it by Equifax concerning Plaintiff's dispute.

271. As a direct and proximate result of Stride's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

272. Stride's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

273. In the alternative, Stride's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XXV**
**15 U.S.C. § 1681s-2(b)(1)(D)**
**Failure to report results to all bureaus**
(Against Stride)

274. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

275. Where an investigation finds that information is incomplete or inaccurate, the furnisher must report those results to all other consumer reporting agencies to which it furnished the information and that compile and maintain files on a nationwide basis.

276. Stride failed to report the results of its investigation to all consumer reporting agencies to which it furnished information concerning the account. The account accordingly continued to be reported inconsistently across Plaintiff's consumer reports.

277. As a direct and proximate result of Stride's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit

opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

278. Stride's conduct was willful, entitling Plaintiff to actual damages, statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

279. In the alternative, Stride's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

**COUNT XXVI**
**15 U.S.C. § 1681s-2(b)(1)(E)**
**Failure to correct or block**
(Against Stride)

280. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

281. If an investigation finds that an item of information is inaccurate, incomplete, or cannot be verified, the furnisher must promptly modify, delete, or permanently block the reporting of that information.

282. Stride failed to modify, delete, or permanently block the reporting of the inaccurate and incomplete information concerning the account, which continued to be reported after the investigation concluded.

283. As a direct and proximate result of Stride's conduct, Plaintiff suffered concrete injury in fact, including denial of credit, damage to her credit rating and reputation, lost credit opportunities, increased cost of credit, out-of-pocket expense, and emotional distress.

284. Stride's conduct was willful, entitling Plaintiff to actual damages, statutory damages,

punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

285. In the alternative, Stride's conduct was negligent, entitling Plaintiff to actual damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants, and award:

a. Actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o;

b. Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d. Injunctive and declaratory relief to the extent available;

e. Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

f. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 5, 2026

Respectfully submitted,

________________________________

Adam J. Fishbein (AF-9508)
Adam J. Fishbein
Attorney at Law
735 Central Avenue
Woodmere, New York 11598
516-668-6945
fishbeinadamj@gmail.com
Attorney for Plaintiff